# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re:<br><br>THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO,<br>as representative of<br><br>THE COMMONWEALTH OF PUERTO RICO, *et al.*,<br>Debtors. | PROMESA<br>Title III<br><br>Case No. 17-BK-3283 (LTS)<br><br>(Jointly Administered) |
| DRIVETRAIN, LLC, in its capacity as the Trustee of the Commonwealth Avoidance Actions Trust,<br>Plaintiff,<br><br>v.<br>BARCLAYS CAPITAL, INC.; BMO CAPITAL MARKETS GKST INC.; BofA SECURITIES, INC., A/K/A BANC OF AMERICA SECURITIES LLC, A/K/A BofA MERRILL LYNCH; CITIBANK N.A., NEW YORK; CITIGROUP GLOBAL MARKETS INC.; GOLDMAN SACHS & CO. LLC; GOLDMAN SACHS BANK USA, f/k/a GOLDMAN SACHS CAPITAL MARKETS, L.P.; GOLDMAN SACHS MITSUI MARINE DERIVATIVE PRODUCTS, L.P.; JEFFERIES LLC; J.P. MORGAN SECURITIES LLC; BANK OF AMERICA CORPORATION; MERRILL LYNCH CAPITAL SERVICES, INC.; MORGAN STANLEY & CO. LLC; MORGAN STANLEY CAPITAL SERVICES LLC, f/k/a MORGAN STANLEY CAPITAL SERVICES, INC.; RBC CAPITAL MARKETS, LLC; ROYAL BANK OF CANADA; SAMUEL A. RAMIREZ & CO., INC.; SANTANDER SECURITIES LLC; UBS AG; UBS FINANCIAL SERVICES, INC. OF PUERTO RICO; and JOHN DOES 1-10,<br>Defendants. | Adv. Proc. No. 19-280 (LTS) |

**SUPPLEMENTAL MEMORANDUM OF LAW OF
CITIBANK, GS BANK, AND GS MITSUI IN SUPPORT OF DEFENDANTS'
<u>MOTION TO DISMISS WITH PREJUDICE</u>**

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

FACTUAL BACKGROUND ................................................................................................... 4

ARGUMENT .............................................................................................................................. 6

    I.    The New Swap Claims Are Untimely. .............................................................................. 6

    II.   The New Swap Claims Do Not Relate Back To The Original Complaint. ....................... 7

        A.    The Original Complaint Did Not Even Attempt to Set Out the Challenged Transfers. ................................................................................................................. 8

        B.    The Original Complaint Did Not Omit the New Defendants By Mistake. ............ 9

CONCLUSION ......................................................................................................................... 11

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Beddall v. State St. Bank & Tr. Co.*,
 137 F.3d 12 (1st Cir. 1998) ........................................................................................................4

*Cook v. Berger-Hershkowitz*,
 No. 03-CV-12138, 2009 WL 10712600 (D. Mass. June 18, 2009) ....................................9, 11

*In re Everfresh Beverages, Inc.*,
 238 B.R. 558 (Bankr. S.D.N.Y. 1999) .......................................................................................8

*Figueroa Collazo v. Ferrovial Construccion PR, LLC*,
 No. 20-CV-1612, 2021 WL 4482268 (D.P.R. Sept. 30, 2021) ..................................................1

*González-Madera v. De Jesús*,
 No.08-CV-160, 2010 WL 235139 (D.P.R. Jan. 20, 2010) .........................................................8

*Hannon v. Beard*,
 979 F. Supp. 2d 136 (D. Mass. 2013) ........................................................................................1

*Lape v. Pennsylvania*,
 157 F. App'x 491 (3d Cir. 2005) .............................................................................................10

*Leonard v. Parry*,
 219 F.3d 25 (1st Cir. 2000) .....................................................................................................10

*In re M. Fabrikant & Sons, Inc.*,
 480 B.R. 480 (Bankr. S.D.N.Y. 2012) .......................................................................................8

*Mercado v. Hyannis Air Servs., Inc.*,
 No. 20-CV-1228, 2022 WL 16964118 (D.P.R. Nov. 15, 2022) ..............................................10

*Morel v. DaimlerChrysler AG*,
 565 F.3d 20 (1st Cir. 2009) .....................................................................................................11

*In re New Bedford Capacitor, Inc.*,
 301 B.R. 375 (Bankr. D. Mass. 2003) .......................................................................................8

*O'Loughlin v. Nat'l R.R. Passenger Corp.*,
 928 F.2d 24 (1st Cir. 1991) .......................................................................................................9

*Rogatz v. Hosp. Gen. San Carlos, Inc.*,
 89 F.R.D. 298 (D.P.R. 1980) ...................................................................................................10

*Rys v. U.S. Postal Serv.*,
　886 F.2d 443 (1st Cir. 1989) ...................................................................................................8

*Sears Petroleum & Transp. Corp. v. Burgess Constr. Svcs., Inc.*,
　417 F. Supp. 2d 212 (D. Mass. 2006) .....................................................................................7

**Statutes**

11 U.S.C. § 544 ...............................................................................................................................6

11 U.S.C. § 546 .......................................................................................................................2, 6, 7

11 U.S.C. § 548 ...............................................................................................................................6

48 U.S.C. § 2164 .............................................................................................................................7

**Rules**

Fed. R. Civ. P. 15 ................................................................................................................3, 7, 8, 9

Citibank, N.A. ("Citibank"), Goldman Sachs Bank USA ("GS Bank"), and Goldman Sachs Mitsui Marine Derivative Products, L.P. ("GS Mitsui") (together, the "New Defendants") submit this Supplemental Memorandum of Law in Support of Defendants' Motion to Dismiss with Prejudice, providing additional reasons the fraudulent transfer claims asserted against them in Counts III, IV, and V (the "New Swap Claims")[1] of the Second Amended Complaint (the "SAC") should be dismissed.

## PRELIMINARY STATEMENT

The New Swap Claims should be dismissed because they are untimely and do not relate back to the original complaint (the "Original Complaint") (Dkt. No. 1).

The Special Claims Committee[2] for the Financial Oversight Management Board (the "Oversight Board") commenced this adversary proceeding on May 2, 2019, when it filed the Original Complaint. The Original Complaint did not assert any claims at all against the New Defendants. Instead, it primarily alleged that 18 *other* financial institutions "aided and abetted" the Government Development Bank for Puerto Rico ("GDB") when it allegedly breached its fiduciary duty to the Commonwealth of Puerto Rico (the "Commonwealth") by causing the Commonwealth "to unnecessarily incur hundreds of millions of dollars of costs and expenses to execute multiple

---

[1] Count II of the SAC also should be dismissed as to Citibank because it is purportedly brought against "all Defendants" but contains no allegations concerning Citibank. *See Figueroa Collazo v. Ferrovial Construccion PR, LLC*, No. 20-CV-1612, 2021 WL 4482268, at *9 (D.P.R. Sept. 30, 2021) ("The question before the Court is 'whether, as to each defendant, [the] plaintiff's pleadings are sufficient to state a claim on which relief can be granted.'" (quoting *Sanchez v. Pereira-Castillo*, 590 F.3d 31, 48 (1st Cir. 2009))); *Hannon v. Beard*, 979 F. Supp. 2d 136, 140 (D. Mass. 2013) ("[A]t a minimum, the complaint must 'set forth minimal facts as to who did what to whom.'" (quoting *Educadores Peurtorriquenos en Accion v. Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004))).

[2] Drivetrain, LLC (the "Trustee") has been substituted as plaintiff in this adversary proceeding in its capacity as post-confirmation litigation trustee. *See Order Granting the Unopposed Motion to Substitute the Avoidance Actions Trustee as Plaintiff* (Dkt. No. 39).

1

issuances of bonds . . . [that] deepened the insolvency of the Commonwealth." (Orig. Compl. ¶¶ 3-5, 10-27.) Even though the Special Claims Committee knew from the report drafted by Kobre & Kim LLP[3] (the "K&K Report") that the Commonwealth had paid Citibank and "Goldman" tens of millions of dollars in swap termination payments, the Original Complaint did not even mention those swap termination payments, much less attempt to avoid them. Notably, insofar as the Original Complaint sought at all to recover "swap termination fees,"[4] those claims were made in connection with the GO Series 2014 Bonds and limited to payments made to only three financial institutions—UBS Financial Services Inc. of Puerto Rico, Morgan Stanley, and Merrill Lynch Capital Services, Inc. (the "Original Swap Counterparty Defendants"). (Orig. Compl. ¶¶ 28-30, 118, 152-56, 171-76, 188-89.)

Belatedly, the Trustee took a different course in the SAC. In addition to jettisoning the claims for aiding and abetting breach of fiduciary duty, the Trustee asserted for the first time claims to avoid swap termination payments made to the New Defendants. The Trustee is not entitled to do so. The SAC was filed on September 15, 2022, more than five years after the Commonwealth filed its Title III petition on May 3, 2017. But the Bankruptcy Code requires that avoidance claims, like those the Trustee asserts, be brought within two years of the petition date. *See* 11 U.S.C. § 546(a).

The New Swap Claims are therefore untimely, and the Trustee cannot pursue them unless it can show that they "relate back" to the Original Complaint under subsections (B) and (C) of Federal Rule of Civil Procedure 15(c)(1). Specifically, the Trustee must show: (1) that the New

---

[3] The Special Investigations Committee of the Oversight Board retained Kobre & Kim LLP as its Independent Investigator and charged it with investigating potential claims to be brought by the Commonwealth and its instrumentalities. (*See infra* at 4.)

[4] The Original Complaint and the SAC incorrectly use the term "swap termination fees" to refer to payments made in connection with the termination of swap agreements.

2

Swap Claims arise "out of the conduct, transaction, or occurrence set out—or attempted to be set out"—in the Original Complaint, Fed. R. Civ. P. 15(c)(1)(B), and (2) that the New Defendants had notice of the Original Complaint such that they "will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against [them], but for a mistake concerning the proper parties' identit[ies]," Fed. R. Civ. P. 15(c)(1)(C). The Trustee cannot satisfy these requirements.

*First*, the Trustee cannot show that the New Swap Claims arise out of the same transactions alleged in the Original Complaint because the Original Complaint did not allege any facts regarding any swap termination payments made to the New Defendants. The Original Complaint sought to recover swap termination payments made to only the Original Swap Counterparty Defendants in connection with the GO Series 2014 Bonds. The Original Complaint did not contain a single allegation regarding any swap transaction with the Puerto Rico Highways and Transportation Authority ("HTA")—the only counterparty to any alleged swap with Citibank—and the Original Complaint did not even concern HTA bonds. And neither GS Bank or GS Mitsui received any swap termination payments from the proceeds of the GO Series 2014 Bonds. Under controlling First Circuit law, the Original Complaint's generalized allegations concerning swap transactions of the Commonwealth and its instrumentalities do not provide a basis for the New Swap Claims to relate back to the Original Complaint. Nor do the Original Complaint's allegations regarding other swap termination payments made to different defendants, *i.e.*, the Original Swap Counterparty Defendants, suffice to satisfy the Trustee's burden.

*Second*, the Trustee has no basis to claim that the New Defendants were on notice and "knew or should have known" that the Special Claims Committee would have named them in the Original Complaint but for a mistake regarding their identity. To the contrary, the allegations in

3

the SAC show that the Special Claims Committee's failure to assert claims against the New Defendants was not a mistake. Prior to the filing of the Original Complaint, another committee of the Oversight Board—the Special Investigation Committee—conducted an extensive investigation into the potential origins of the Commonwealth's financial crisis, culminating in the publication of the K&K Report.[5] The K&K Report—which the Special Claims Committee had in hand eight months before it filed the Original Complaint—referenced the swap termination payments made by the Commonwealth and its instrumentalities, including those that were the subject of claims asserted in the Original Complaint and those that the SAC now belatedly seeks to avoid.

## FACTUAL BACKGROUND

On May 3, 2017, the Oversight Board formally commenced Title III proceedings for the Commonwealth of Puerto Rico pursuant to the Puerto Rico Oversight, Management, and Economic Stability Act ("PROMESA"). (SAC ¶¶ 84, 197.) Thereafter, the Oversight Board created the Special Investigation Committee to investigate potential claims arising out of Puerto Rico's fiscal crisis, including the Commonwealth's use of interest rate swap transactions. (*Id.* ¶¶ 200-02; Declaration of Julie E. Cohen, Dkt. No. 136, Ex. 1, K&K Report at 412-45, 565-71.)[6] It hired Kobre & Kim LLP to conduct the investigation. (SAC ¶ 200.) On August 20, 2018, Kobre & Kim issued the K&K Report. (*Id.*) The K&K Report states that "[f]rom 2004 to 2008," the Commonwealth and its instrumentalities "entered into at least 77 Swaps," and that "[b]y September 30, 2014, the[y] . . . had paid over $1.085 billion in net termination fees to the banks

---

[5] The SAC has an entire section dedicated to the K&K Report (*see* SAC ¶¶ 200-02), and the SAC expressly states that the Special Claims Committee was formed "to pursue certain claims based on the K&K Report's findings" (SAC ¶¶ 200-03). Therefore, the K&K Report "effectively merges into the pleadings," and this Court "can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall v. State St. Bank & Tr. Co.*, 137 F.3d 12, 17 (1st Cir. 1998).

[6] References to "Ex." refer to exhibits to the Declaration of Julie E. Cohen, Dkt. No. 136.

4

that acted as counterparties to these agreements." (Ex. 1, K&K Report at 413.) According to the K&K Report, the Commonwealth and its instrumentalities generally entered into these swap agreements to "transfer the risk of interest rate fluctuations" between the issuer and the counterparties. (*Id.*) The K&K Report further identified Citibank and "Goldman," among others, as recipients of swap termination payments. (*Id.* at 433.)

On August 28, 2018, eight days after the K&K Report was issued, the Oversight Board appointed the Special Claims Committee to pursue claims "based on the K&K report's findings." (SAC ¶ 203.) On May 2, 2019, the Special Claims Committee filed the Original Complaint, which asserted claims against 18 financial institutions based on their role as underwriters of bonds issued by the Commonwealth, the Puerto Rico Public Buildings Authority ("PBA"), and the Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") from 2007 through 2014. (Orig. Compl. ¶¶ 10-27.) The Original Complaint primarily alleged that GDB breached its fiduciary "duties of loyalty, due care and good faith" to the Commonwealth by "caus[ing] the Commonwealth to unnecessarily incur hundreds of millions of dollars of costs and expenses to execute multiple issuances of bonds by the Commonwealth and its instrumentalities." (*Id.* ¶¶ 2-3.) The Original Complaint further alleged that "[i]n its breach of its fiduciary duties, GDB was aided and abetted by the Defendants, each of whom had knowledge that GDB was breaching its fiduciary duties and that it was not adhering to the law." (*Id.* ¶ 5.)

The only swap-based claims the Original Complaint asserted were those against the Original Swap Counterparty Defendants in connection with the GO Series 2014 Bonds. (Orig. Compl. ¶¶ 28-30, 118, 152-56, 171-76, 188-89.) The Original Complaint made no allegations regarding the New Defendants or any swap agreements entered into by the HTA, and in fact did not even mention HTA bonds. Instead, the Original Complaint parroted the high-level findings of

5

the K&K Report that the Commonwealth and its instrumentalities entered into 77 swap transactions and made swap termination payments to unwind those swap transactions. (Orig. Compl. ¶¶ 123-27.)

On September 15, 2022, the Trustee filed the SAC, adding the New Defendants and asserting the New Swap Claims.[7] Specifically, the SAC:

- adds Citibank, alleging that Citibank had at least two swap agreements with the HTA (SAC ¶ 21), and seeks to recover $81,750,000 in swap termination payments made to Citibank on February 20, 2014 (SAC Ex. 17) as fraudulent transfers under the Bankruptcy Code and New York and/or Puerto Rico law in Count III (SAC ¶¶ 224-35), Count IV (SAC ¶¶ 236-44), and Count V (SAC ¶¶ 245-63);

- adds GS Bank, alleging that GS Bank had at least six swap agreements with the Commonwealth (SAC ¶ 24), and seeks to recover $32,260,000 in swap termination payments made to GS Bank in 2011 and 2014 (SAC Ex. 18) as fraudulent transfers under New York and/or Puerto Rico law in Count V (SAC ¶¶ 245-63); and

- adds GS Mitsui, alleging that GS Mitsui had at least one swap agreement with the Commonwealth (SAC ¶ 25), and seeks to recover a $8,365,000 swap termination payment made to GS Mitsui on June 28, 2011 (SAC Ex. 19) as a fraudulent transfer under New York and/or Puerto Rico law in Count V (SAC ¶¶ 245-63).

None of the New Defendants or the New Swap Claims can be pursued at this juncture.

## **ARGUMENT**

### **I. THE NEW SWAP CLAIMS ARE UNTIMELY.**

The New Swap Claims are untimely because they were not brought within two years of the Commonwealth's Title III petition. Section 546(a)(1) of the Bankruptcy Code requires avoidance actions brought under Sections 544 and 548 of the Bankruptcy Code to be brought within two

---

[7] On September 27, 2021, the Special Claims Committee filed a First Amended Complaint that was substantively identical to the Original Complaint and only "amend[ed] the Complaint to correct the case caption and certain related descriptions to identify the PBA as a Title III Debtor." *Urgent Motion for Leave of Court to File First Amended Adversary Complaint* ¶ 5 (Dkt. No. 25).

6

years of the "entry of the order for relief."[8] Here, the order for relief was the Title III petition the Commonwealth filed on May 3, 2017.[9] As the Trustee concedes, Section 546(a)'s statute of limitations expired two years later on May 3, 2019. (SAC ¶ 203.) Because the New Swap Claims were asserted for the first time on September 15, 2022—more than five years after the Commonwealth filed its Title III petition—they are untimely and should be dismissed.[10]

## II. THE NEW SWAP CLAIMS DO NOT RELATE BACK TO THE ORIGINAL COMPLAINT.

Under Federal Rule of Civil Procedure 15(c)(1), a plaintiff may assert an otherwise untimely new claim against a new party only if the amendment "relates back" to the date of the original pleading—that is, if: (1) "the amendment asserts a claim or defense that arose out of the conduct, transaction or occurrence set out—or attempted to be set out—in the original pleading," Fed. R. Civ. P. 15(c)(1)(B), and (2) "the party to be brought in by amendment . . . received such

---

[8] The alternative limitations period under Section 546(a)(1)(B) does not apply here because no trustee was appointed "under section 702, 1104, 1163, 1202, or 1302." The alternative limitations period under Section 546(a)(2) does not apply here because the Commonwealth's Title III proceeding has not been "closed or dismissed."

[9] *See* 48 U.S.C. § 2164(c) ("The commencement of a case under this subchapter constitutes an order for relief."), 2164(a) ("A voluntary case under this subchapter is commenced by the filing with the district court of a petition by the Oversight Board . . . .").

[10] In addition, the Trustee's claims in Count V seeking to avoid swap termination payments made to the New Defendants under Puerto Rico law would not have been timely even if they had been alleged in the Original Complaint. Those claims are subject to a four-year statute of repose that begins to run from the date of the consummation of the contract. (*See* Joint Mem. of Law in Support of Defs.' Mot. to Dismiss with Prejudice § VII.B.1.) Because the last alleged swap agreement was executed on February 14, 2007 (SAC Ex. 2), the Trustee's claims against the New Defendants under Puerto Rico law were untimely when the Commonwealth filed its Title III petition over 10 years later. Section 546(a) does not extend the statute of repose for a claim that expired before the filing of a petition. *See Sears Petroleum & Transp. Corp. v. Burgess Constr. Svcs., Inc.*, 417 F. Supp. 2d 212, 223–24 (D. Mass. 2006) (stating that only avoidance claims that would have been timely as of the petition date may be brought within the two-year time limitation under Section 546(a)). Nor can the Trustee use the IRS's 10-year lookback period to circumvent Puerto Rico's repose period. (*See* Joint Mem. of Law in Support of Defs.' Mot. to Dismiss with Prejudice § VII.B.2-4.)

7

notice of the action that it will not be prejudiced in defending on the merits" and "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity," Fed. R. Civ. P. 15(c)(1)(C). Each of these conditions must be satisfied for the New Swap Claims to relate back to the Original Complaint. *See, e.g.*, *Rys v. U.S. Postal Serv.*, 886 F.2d 443, 445 (1st Cir. 1989); *González-Madera v. De Jesús*, No.08-CV-160, 2010 WL 235139, at *4 (D.P.R. Jan. 20, 2010).

### A. The Original Complaint Did Not Even Attempt to Set Out the Challenged Transfers.

The New Swap Claims do not relate back to the Original Complaint because the eight swap termination payments the Commonwealth paid to the New Defendants were not in the Original Complaint. "[T]he law is clear that each [alleged] preferential and fraudulent transaction is treated separately and distinctly." *In re M. Fabrikant & Sons, Inc.*, 480 B.R. 480, 492 (Bankr. S.D.N.Y. 2012) (citations omitted). The only swap termination payments the Original Complaint sought to avoid were made to the Original Swap Counterparty Defendants—not Citibank, GS Bank or GS Mitsui. (Orig. Compl. ¶¶ 170-76.) Because the Original Complaint challenged only *different* swap termination payments made to *different* recipients, the New Swap Claims do not relate back to the Original Complaint. *In re Everfresh Beverages, Inc.*, 238 B.R. 558, 576 (Bankr. S.D.N.Y. 1999) (denying request to add claims for preferential transfers against new defendants because "[m]ost significantly, the recipients of the challenged payments are different"); *accord In re New Bedford Capacitor, Inc.*, 301 B.R. 375, 380 (Bankr. D. Mass. 2003) (finding that addition of a wholly new preference claim was untimely).

That the Original Complaint includes generalized allegations that the Commonwealth and its instrumentalities "entered into at least 77 swap transactions" (Orig. Compl. ¶¶ 123, 127) does not change the outcome. Those allegations lack the detail "that could be said to give [the New

8

Defendants] notice of the general fact situation out of which the claim in the amended complaint arose." *O'Loughlin v. Nat'l R.R. Passenger Corp.*, 928 F.2d 24, 26-27 (1st Cir. 1991) (affirming denial of motion for leave to amend under Rule 15(c)(1) where plaintiff sought to add claims based on separate injuries sustained on a different date than was asserted in original complaint).

With respect to Citibank in particular, the New Swap Claims plainly do not arise out of any allegations in the Original Complaint. Where the Original Complaint had no allegations regarding HTA bonds or swaps, the New Swap Claims do not arise out of the conduct, transactions, or occurrences challenged in the Original Complaint. And while the SAC alleges "upon information and belief" that the HTA swap termination payments were "funded by the Commonwealth" (*see, e.g.*, SAC ¶ 21), there is no allegation in the Original Complaint that provided Citibank with any notice of that claim. Indeed, Citibank entered the swap agreements with the HTA, a public corporation separate from the Commonwealth, and there was nothing in the Original Complaint remotely suggesting that the Commonwealth paid the HTA's obligations. *See O'Loughlin*, 928 F.2d at 26 ("[T]his court has refused to allow an amendment to assert a claim which was not even suggested in the original complaint.").

### B. The Original Complaint Did Not Omit the New Defendants By Mistake.

While the Trustee's failure to establish the same "conduct, transaction, or occurrence" alone requires dismissal of the New Swap Claims, the New Swap Claims do not relate back to the Original Complaint for the separate and independent reason that the New Defendants did not know—and had no reason to know—that, but for a mistake, they would have been named in the Original Complaint. *See, e.g.*, *Cook v. Berger-Hershkowitz*, No. 03-CV-12138, 2009 WL 10712600, at *2 (D. Mass. June 18, 2009) (finding no mistake where plaintiff "chose not to sue" defendant mentioned in original complaint until after statute of limitations had run); *Mercado v.*

9

*Hyannis Air Servs., Inc.*, No. 20-CV-1228, 2022 WL 16964118, *10 (D.P.R. Nov. 15, 2022) (finding no mistake and granting dismissal where plaintiff "had ample time to discover [newly-named party's] identity and failed to use due diligence in this regard"). "'[A]n amended complaint will not relate back if the plaintiff had been aware of the identity of the newly named parties when she filed her original complaint and simply chose not to sue them at that time.'" *Lape v. Pennsylvania*, 157 F. App'x 491, 497 (3d Cir. 2005) (quoting *Garvin v. City of Philadelphia*, 354 F.3d 215, 221-22 (3d Cir. 2003)); *accord Leonard v. Parry*, 219 F.3d 25, 29 (1st Cir. 2000) ("'[E]ven the most liberal interpretation of mistake cannot include a deliberate decision not to sue a party whose identity plaintiff knew from the outset.'" (quoting *Wells v. HBO & Co.*, 813 F. Supp. 1561, 1567 (N.D. Ga. 1992))); *Rogatz v. Hosp. Gen. San Carlos, Inc.*, 89 F.R.D. 298, 301 (D.P.R. 1980) ("Even if it could be said that the added party knew of the institution of original action . . . that said party could very well have believed that it was not named as a party in the original complaint for tactical reasons.").

That is the exact situation here. The New Defendants were identified in the K&K Report as recipients of swap termination payments. (Ex. 1, K&K Report at 433.) The Special Claims Committee cannot deny it had access to the pertinent information to plead the New Swap Claims if it so desired—the K&K Report, written by another committee of the Oversight Board, was available for at least eight months prior to the filing of the Original Complaint, and the Special Claims Committee used it to plead the claims against the Original Swap Counterparty Defendants. (*See supra* at 5-6.) Yet the Original Complaint included only claims against the Original Swap Counterparty Defendants based on other swap termination payments made from the proceeds of the GO Series 2014 Bonds and did not mention the New Defendants at all, much less allege that they entered into swap transactions with the Commonwealth or any of its instrumentalities.

10

Accordingly, the Trustee cannot meet the requisite burden of proving mistake as required under the relation back doctrine. The Trustee did not bring claims concerning these swap termination payments and mistakenly name the wrong entity in the same corporate structure. *Cf. Morel v. DaimlerChrysler AG*, 565 F.3d 20, 27 (1st Cir. 2009) (plaintiff brought product liability claims but sued Daimler-Chrysler Corporation instead of DaimlerChrysler AG). To the contrary, although the Original Complaint asserted claims against affiliates of the New Defendants based on certain bond issuances, it did not even attempt to allege the New Swap Claims against those affiliates. *See, e.g.*, *Cook*, 2009 WL 10712600, at *2. Because the Original Complaint did not allege the New Swap Claims against even the affiliates of the New Defendants, the omission of the New Defendants could not have been a mere scrivener's error, and the New Swap Claims cannot relate back to the Original Complaint.

## **CONCLUSION**

For these reasons, this Court should dismiss Counts III, IV, and V as to Citibank and Count V as to GS Bank and GS Mitsui, and grant such other further relief as this Court deems just and proper.

Dated: December 29, 2022

| | |
|---|---|
| **GOODWIN PROCTER LLP** | **MORRELL, CARTAGENA & DAPENA LLC** |
| /s/ *Douglas H. Flaum*_____ | /s/ *Ramón E. Dapena*_____ |
| Douglas H. Flaum (*Pro Hac Vice*) | |
| Charles A. Brown (*Pro Hac Vice*) | Ramón E. Dapena |
| Howard S. Steel (*Pro Hac Vice*) | USDC-PR No. 125005 |
| Stacy A. Dasaro (*Pro Hac Vice*) | Iván Lladó |
| The New York Times Building | USDC-PR No. 302002 |
| 620 Eighth Avenue | PO Box 13399 |
| New York, NY 10018 | San Juan, Puerto Rico 00908 |
| Telephone: (212) 813-8800 | Telephone: (787) 723-1233 |
| Facsimile: (212) 355-3333 | Facsimile: (787) 723-8763 |
| Email: dflaum@goodwinlaw.com | Email: ramon.dapena@mbcdlaw.com |
| Email: cbrown@goodwinlaw.com | Email: ivan.llado@mbcdlaw.com |
| Email: hsteel@goodwinlaw.com | |
| Email: sdasaro@goodwinlaw.com | *Counsel for Goldman Sachs Bank USA and Goldman Sachs Mitsui Marine Derivative Products, L.P.* |
| *Counsel for Goldman Sachs Bank USA and Goldman Sachs Mitsui Marine Derivative Products, L.P.* | |
| **GOODWIN PROCTER LLP** | **McCONNELL VALDÉS LLC** |
| /s/ *Marshall H. Fishman*_____ | /s/ *Roberto C. Quiñones-Rivera*___ |
| Marshall H. Fishman (*Pro Hac Vice*) | Roberto C. Quiñones-Rivera |
| Meghan K. Spillane (*Pro Hac Vice*) | USDC-PR No. 211512 |
| The New York Times Building | 270 Muñoz Rivera Avenue Hato Rey, |
| 620 Eighth Avenue | Puerto Rico 00918 |
| New York, NY 10018 | Telephone: (787) 250-2631 |
| Telephone: (212) 813-8800 | Facsimile: (787) 759-8282 |
| Facsimile: (212) 355-3333 | Email: rcq@mcvpr.com |
| Email: mfishman@goodwinlaw.com | |
| Email: mspillane@goodwinlaw.com | *Counsel for Citibank, N.A.* |
| *Counsel for Citibank, N.A.* | |